STATE OF NORTH CAROLINA v. COLUMBUS SHARPE

No. 737SC173

(Filed 9 May 1973)

**1. Criminal Law § 99— questioning of defendant by trial court — prejudicial error**

In this homicide prosecution wherein defendant contended he shot deceased in self-defense while being assaulted by deceased, his brother and some of his friends, the trial court committed prejudicial error in questioning defendant as to whether there were about as many people with him as there were with deceased and his brother.

**2. Homicide § 28— self-defense — place of business — instructions**

In this homicide prosecution wherein defendant claimed self-defense, the trial court erred in instructing the jury that "a person's place of business is considerably different from his home. So if you have heard some law or know of some law about the right to protect your home as a castle, you will disregard that, as that does not apply as far as the operation of a business is concerned."

APPEAL by defendant from *Martin (Perry), Judge,* 7 August 1972 Session of Superior Court held in EDGECOMBE County.

Defendant was placed on trial for murder in the second degree and was convicted of involuntary manslaughter as a result of the fatal shooting of one Willie Ray Jones. Judgment imposing a prison sentence of ten years was entered.

*Attorney General Robert Morgan by Charles M. Hensey, Assistant Attorney General for the State.*

*Joel K. Bourne for defendant appellant.*

VAUGHN, Judge.

Defendant's assignments of error based on the denial of his motions for nonsuit are without merit.

Defendant brings forward numerous other assignments of error. We will discuss only the two we consider so prejudicial as to require a new trial.

[1] Defendant operated a place called Willoughby's. It was described as a place to have a good time. There was a pool table and a piccolo. The State offered evidence which would have permitted a verdict of guilty of murder in the second degree, manslaughter or involuntary manslaughter. The defendant offered evidence, which he contended, tended to show that he killed in

self-defense. The credibility of the evidence is, of course, for the jury. Defendant offered evidence to the effect that, during an interval while he was away from his place of business, deceased had abused the person left in charge of the business, forced his way behind the counter and taken a quarter from the cash register. Defendant returned to the premises and went behind the counter. Robert, a brother of deceased, began to curse and attempted to get behind the counter to defendant. Defendant was scared. Robert told defendant he was going to kill him just as soon as he could get back there. Deceased said "damn right." Deceased had a pool stick in his hand. Friends of deceased were with them. Defendant kept telling them to get back. Defendant was afraid. He picked up his rifle. Deceased acted like he was trying to hit defendant with the pool stick. There were others with sticks. "They" pushed a screen back on defendant and "I fell back and started shooting." Defendant shot, but did not kill, Robert and then shot deceased. After cross-examination by the solicitor, the court undertook to cross-examine defendant. The court's interrogation takes up several pages of the record on appeal. Although it may well be that some of the court's questions were for legitimate clarification, the prejudice to defendant and the error in the following exchange between the court and the defendant is apparent.

"Q. So after you shot Robert you just turned around to your left and shot Willie?

A. No. He come up under there with a pool stick and that's when I must have shot him. I didn't have any way to get out and I was scared and didn't know what to do. I knew I couldn't fight five or six guys in there and they were going to kill me for nothing.

Q. Well, let's see. Jimmy Taylor, William Taylor, Linwood Taylor, Terry Joyner and J. C. Horne, were in there with you, weren't they?

A. Yes.

COURT: So there were just about as many people with you as there were with the Joneses, weren't there?

A. Just about."

[2]   During the course of his charge to the jury the court, without further amplification, injected the following.

---

Smith v. Elks

---

"The defendant, Columbus Sharpe, has testified. He says that he is 29 years of age, that he is the operator of this store; that he rents it or leases it from someone, and that he has the right to be upon the premises. But the court charges you that a person's place of business is considerably different from his home. So if you have heard some law or know of some law about the right to protect your home as a castle, you will disregard that, as that does not apply as far as the operation of a business is concerned. . . . "

Although His Honor's meaning is not clear to us, the possibility of prejudice to the defendant from this remark, absent additional and proper instructions as to defendant's duty, or lack of duty, to retreat cannot be ignored. Moreover, "no duty to retreat devolves upon a person who is assailed, without any fault of his own, *in his home or place of business or on his premises.*" *State v. Lee,* 258 N.C. 44, 127 S.E. 2d 774. (Emphasis supplied.) See also *State v. Pennell,* 224 N.C. 622, 31 S.E. 2d 857. *State v. Grant,* 228 N.C. 522, 46 S.E. 2d 318.

New trial.

Judges CAMPBELL and HEDRICK concur.